[PHILADELPHIA, FEBRUARY 2ND, 1839.]

## HAMERSLEY and Wife *against* SMITH and Another.

### CASE STATED.

A testator bequeathed as follows :—"Item. What moneys may be received by my executors from W. F.'s estate towards the payment of a debt of $10,000, which he owes me, it is my will, shall be invested by my executors in trust for the sole use and benefit of my grand-daughter M. F. ; but if she, the said M. F., should die before me, then it is my will and I do direct that the same shall be paid to her daughter." M. F. survived the testator, and also survived her husband W. F. and married a second time. *Held*, that the trust for her separate use ceased on her discoverture, and was not revived upon her second marriage; and, therefore, that the trustees, under an assignment made by her and her second husband, were entitled to recover the fund from the trustee appointed under the will.

AN amicable action was instituted in this Court by Sylvanus Hamersley and Maria his wife, late Maria Francis, for the use of Rebecca H. Willing, trustee of Mrs. Maria Hamersley, against James S. Smith, Esquire, and Henry Hollingsworth, executors of the will of Dr. Robert Blackwell, deceased ; and by agreement of counsel, a case was stated as follows, which was to be considered in the nature of a special verdict, viz :—

" The late Dr. Robert Blackwell made and executed his last will and testament in due form of law, bearing date March 26th, 1828, and duly proved on the 19th of February, 1831.

By the said will it is provided, among other things, as follows :

' Item. What moneys may be received by my executors from Willing Francis's estate, towards the payment of a debt of ten thousand dollars, which he owes me, it is my will, shall be invested by my executors in trust for the sole use and benefit of my grand-daughter Maria Francis; but if she, the said Maria Francis, should die before me, then it is my will, and I do direct, that the same shall be paid to her daughter Sophia Harrison Francis.'

The said Maria Francis, at the date of the will, and at the time of

the testator's death, was the wife of Willing Francis, and survived the testator, and then became sole, and afterwards intermarried with Sylvanus Hamersley.

The said Sylvanus Hamersley and Maria, his, wife, on the 28th day of April, 1837, executed an assignment of the said legacy and of the moneys mentioned therein, to Rebecca H. Willing, in trust to and for the only sole and exclusive use and behoof of the said Maria Hamersley.

A sum of money, amounting to eight hundred and seventy-five dollars, has been received by the said executors, applicable to the said legacy.

The question submitted for the opinion of the Court is, whether the plaintiffs are entitled to receive the same from the defendants? Judgment to be entered accordingly."

Mr. *J. R. Ingersoll,* for the plaintiffs.
This is an amicable proceeding to ascertain which of these trusts is to be sustained. At the date of the will and at the time of the death of Dr. Blackwell, his grand-daughter, the legatee, was the wife of Mr. Willing Francis. The trust for her separate use was effectual and operative from the time of the testator's death, until at least, the death of Mr. Francis. Whether a trust for the separate use of a married woman continues if she becomes discovert, and revives on a second marriage, is an interesting question, which does not appear to have been decided in this country. In *Smith* v. *Starr*, (3 *Wharton Rep.* 62,) it was held, that a restraint upon alienation, inconsistent with the general character of the estate, ceased on the death of the husband. Judge ROGERS, who delivered the judgment of the Court, declined expressing any opinion on the question, whether the restrictions of a separate estate revived on a second marriage. In England the question has been substantially decided. *Knight* v. *Knight,* (6 *Simons,* 121; S. C. 9 *Eng. Ch. Rep.* 199.) *Benson* v. *Benson,* (6 *Simons,* 126; S. C. 9 *Eng. Ch. Rep.* 201.) *Hayes on Conveyancing,* 83, note. *Atherley on Settlements,* 333. 2d *Thomas Co. Litt.* 689, note. 1 *Roper on Husband and Wife,* 201. The object of this suit is to procure this fund for the trustee of the wife, to whom it is specially bequeathed, without liability to the creditors of the husband, who never has been in any way connected with it. [GIBSON, C. J.—*Siter's case,* (4 *Rawle,* 468,) seems to show that the assignment was not such a reduction into possession as to make the wife's property liable to her husband's creditors.]

Mr. *James S. Smith,* for the defendants.
The defendants in this case are merely stakeholders, having no

(Hamersley *v.* Smith.)

interest whatever in the decision of the question; they desire that decision to justify them as executors. Dr. Blackwell was assignee of Willing Francis, under an assignment for the benefit of creditors. He knew, therefore, that the husband of the legatee was insolvent. The present husband is also insolvent. The question, whether a trust ceases on the discoverture of a woman and revives on a second marriage, appears to remain unsettled yet, even in England. The recent decisions in England appear not to have been satisfactory to the profession there. *Hayes on Conveyancing*, 83, *note*. 2 *Kent's Com.* (last ed.) 165, *note*. The doctrine in this state respecting separate estates of married women differs essentially from that of England. *Lancaster* v. *Dolan*, (1 *Rawle*, 247.) This was a continuing trust. Considerable sums of money were to be collected from the sale of lands, which yet remain unsold. The trust arises when moneys are received, and it is for the sole and separate use of his grand-daughter without reference to her husband.

The opinion of the Court was delivered by

GIBSON, J. C.—The point in contest was virtually decided in *Massey* v. *Parker*, (2 *Mylne & Keene*, 174,) when it was settled that a restriction attempted by a gift to the separate use of an unmarried woman, is an impracticable one ; and that it has no force to prevent her from giving the property to a husband by the act of marriage, or disposing of it in the interim. The principle has its root in *Brandon* v. *Robinson*, (18 *Ves.* 492,) where it was held, that though property may be so limited as to cease or go over on the happening of a contingency ; yet that while it remains in the donee, it is so far subject to the legal incidents of ownership as to be unsusceptible of a restriction which would exempt it from liability to his creditors. Perhaps it is not easy to discern the policy of a rule which disables a benefactor from making a determinate provision for his beneficiary, which cannot be squandered or reft from him ; yet the law seems to be thus settled, not only by the cases cited, but by *Newton* v. *Reid*, (4 *Simons*, 141,) and *Woodmeston* v. *Walker*, (2 *Russ. & Mylne*, 197,) in which the principle was applied to an unmarried woman. An apparent exception to it, is a gift to the separate use of a woman in contemplation of her marriage with a particular person ; which, by force of the agreement implied by his assent, constitutes a future separate use during the particular coverture, but which is in reality no exception at all. *Brandon* v. *Robinson* was the case of a gift to a male ; but its principle was soon found to be equally as operative in the case of a female ; and the English chancellors gave it as much scope as they could, even in cases of an admitted separate use, by allowing to a wife the dominion of a *feme sole* wherever her power over the gift was not restrained by the terms of the trust,—a principle we rejected in *Lancaster* v.

(Hamersley *v.* Smith.)

*Dolan,* and with what reason, is seen in their restless and feverish course in respect to it. In that class of cases, however, there is, as I have said, an admitted separate use in the first instance; and the question has regard to a limitation of power which the donor is unquestionably competent to impose. In this, it is whether he is competent to engraft on an absolute gift, not by way of cesser or donation over, a present disability to transfer the dominion over it by marriage,—in other words, whether he can annex a repugnant qualification to a gift, which is to be enjoyed, at least for a period, in full property; and to sustain the affirmative of it, would in effect impose, by anticipation, one of the disabilities of coverture on an unmarried woman, and, according to the British principle, free her from it the moment she married; which would turn the law upside down. Admitting the soundness of the principle that there cannot be a restraint which is repugnant to the gift, it is impossible to doubt the correctness of the decision in *Massey* v. *Parker,* which is in accordance with it. Now the difference betwixt that case and the present, is that here the feme was married at the time of the gift, and there she was not; but the effect of it is only, that she had in our case an unquestionable separate use during the first coverture. This separate use and the coverture, however, expired together, as we determined in *Smith* v. *Starr;* and she became the owner without regard to the previous qualification. That being so, the limitation of a further use, would be as repugnant to the nature of the gift as if she had not been married; and that the previous qualification was not revived by the second marriage, is a corollary of all the cases.

Judgment for the plaintiffs.