## Vaux *against* Parke.

Devise by a father to his son of a house and lot in fee simple; by a subsequent clause he gave it to trustees in fee in trust during the life of the son to pay over the moneys, &c., into his proper hands, or to such persons as he may appoint, and after his death to convey according to the son's appointment by will, or, in default, to such as would be his heirs if he died intestate, with power to the trustees and son to alter the property and reinvest, provided that if the son should become so relieved from embarrassment as in the opinion of the trustees to render it expedient, they should convey to him in fee. *Held*, that the son had no estate in the land, legal or equitable, which could be seized and sold by execution on a judgment obtained against him.

THIS was an action of ejectment by Richard Vaux against Hannah Parke, tried at Nisi Prius, in September 1843, before SERGEANT, J., who directed a nonsuit to be entered. It was brought to recover a messuage and lot of ground at the corner of Locust street and Raspberry alley, in the city of Philadelphia. The plaintiff showed a judgment confessed by James P. Parke, in the District Court, on the 25th July 1835, for $4600, conditioned for the payment of $2300; a *scire facias post annum et diem* issued on the same, and judgment 22d June 1839, for want of an affidavit of defence, plea 22d June 1839, of discharge under the insolvent laws; *fieri facias*, sale and sheriff's deed for the premises to the plaintiff, Richard Vaux, dated 5th October 1839, conveying all the interest of James P. Parke in the premises. He then gave in evidence the will of Dr. Thomas Parke (the defendant's father) and claimed to recover one equal undivided third part of the premises. The Judge who tried the cause was of opinion, that on the evidence James P. Parke took no interest in the premises which could be seized or taken in execution.

The will was as follows:

Imprimis, I hereby nominate and appoint my sons Thomas Parke, and James Pemberton Parke, together with my friends, Benjamin R. Morgan and Joseph P. Norris, Esquires, Executors of this my last Will and Testament.

Item. I desire my funeral expenses, and all my just debts, may be paid by my executors, as soon as they can make it convenient after my decease.

Item. I give and bequeath to my three children, Hannah Parke, Thomas Parke, and James Pemberton Parke, and to their heirs and assigns, all the house, lot, &c., in which I now reside, situate on the north side of Locust street, between Ninth and Tenth streets, at the corner of Raspberry alley, clear of all incumbrances; the property to be owned and possessed equally

between them, share and share alike, as tenants in common; and I affectionately desire and enjoin them to continue to reside together in harmony and love on the premises.

Item. I give and bequeath to my dear daughter, Hannah Parke, her heirs and assigns, the house and lot of ground she lately occupied, on the north side of Spruce street between Seventh and Eighth streets, which I *some years since* purchased of David Evans, Jr., clear of all incumbrance excepting a ground-rent of $46.67 per annum. Also, all those three ground-rents of $44 per annum, each issuing out of three contiguous lots of ground situate on the east side of Green's court, near Pine street, and between Fourth and Fifth streets, granted by John B. Bernadow to Clement Lee Bready, Hall and Lyndall, and to Luther Barnes, amounting together to $132 per annum, clear of all deductions for taxes, &c. I likewise give and bequeath to my said daughter, her heirs and assigns, all that rent-charge of fifty silver dollars per annum, issuing out of a house and lot of ground on the east side of Twelfth street, near Locust street, and payable half-yearly, clear of all deductions for taxes, &c., lately purchased by me from Sarah Forrest. I also give and bequeath to my said dear daughter, her heirs and assigns, all that ground-rent of $20 per annum, purchased by me from the executors of Hugh de Haven, issuing out of a lot of ground on the east side of Schuylkill Eighth street, between Sassafras and Vine streets, containing 40 feet front, and 196 feet deep, payable by George Walker, on the first day of July annually, clear of all deductions for taxes, &c. I also bequeath to my said dear daughter, her heirs and assigns, 50 shares of my new stock in the Philadelphia Insurance Office; likewise my share in the Library Company of Philadelphia; and, lastly, my chamber clock, with the bureau on which it formerly stood, together with any other pieces or parts of my household furniture and plate not otherwise disposed of in this, my last Will, which she may select and choose to accept.

Item. I give and bequeath to my son, Thomas Parke, his heirs and assigns, twenty shares of stock in the Trenton Banking Company. I likewise give him my silver can, marked T. P., and my best bed, bedding, mattrass, &c., with the drawers, chairs, and furniture of my chamber, including the desk bequeathed to me by his grandfather, Thomas Parke; and, lastly, I hereby remit and exonerate him from the payment of all the sums of money which, at sundry times, I formerly lent unto him.

Item. I give and bequeath to my son, James Pemberton Parke, his heirs and assigns, all those two contiguous lots of ground in the village of Hamilton, at the corner of Spruce and Parke streets, numbered in the plan of that village 75 and 77. I likewise give him my two silver cans, marked R. P. Also, my mahogany clothes-press and book-case, with all the books it may contain at the time of my decease; and, lastly, I hereby remit

[Vaux v. Parke.]

and exonerate him from the payment of sundry sums of money I lately lent to him.

Item. I give and bequeath to my niece, Jane Parke, daughter of my late brother Robert, my two silver butter boats; and to my friend Benjamin R. Morgan, I give my gold watch; and to my friend Joseph P. Norris, I give my two small hooped silver cans, marked with the initials of my name; which they will each please to accept as small tokens of my affectionate remembrance.

Item. I give and bequeath to the Library Company of Philadelphia, and their successors, all that yearly rent-charge of 50 silver dollars, lawful money of the United States, issuing out of a brick house and lot of ground, situate at the north-east corner of Pine and Thirteenth streets, in the city of Philadelphia, granted by John H. Brinton to Andrew B. Friend; the rent is payable half yearly, clear of any deduction, defalcation or abatement, for any taxes, charges or assessments, whatsoever; and I hereby empower the Directors of the said Library Company, for the time being, to receive the said ground-rent of $50 per annum as it becomes due, and apply the same to the use and improvement of the Library forever.

Item. I give and bequeath to the Contributors of the Pennsylvania Hospital, and their successors, all that yearly rent-charge, or sum of 24 Spanish milled silver dollars, issuing out of a lot of ground on the west side of Fourth street, between Spruce and Pine streets, granted by James Pemberton to Moses Bussy, reserving thereout the above-mentioned yearly rent-charge; and I hereby empower the managers of the said Hospital, for the time being, to receive and apply the same towards the more comfortable accommodation of that class of patients under their care, who are or may be deprived of the use of their reason.

Item. I hereby give and bequeath to the Orphan Society, lately established at the north-east corner of Schuylkill Fifth and Cherry streets; and to the Widow's and Indigent Single Woman's Asylum, situate in Cherry street, adjoining the Orphan's Asylum above-mentioned, all that rent-charge of $32 per annum, payable, clear of all deductions for taxes, &c., purchased by me from Joseph Watson, and issuing out of a lot of ground situate on the north-east corner of Delaware Fourth and Lombard streets; being 19 feet 3 inches in front on Fourth street, and 60 feet deep on Lombard street to a four feet wide alley. The said ground-rent is to be collected annually when due, by direction of the Managers of the above-mentioned charitable institutions, and divided into two equal parts of $16; one of the said portions is to be paid to the Treasurer of the Orphan's Asylum, and the remaining moiety to the Treasurer of the Widow's Society, for the time being, for the benefit and use of the orphans and widows that may from time to time occupy those charitable establishments. But my mind and will is, that if both or either of those

benevolent institutions should, at any time hereafter, be discontinued, the portion hereby bequeathed shall, from and after such discontinuance, cease, and return to my children or their heirs; and I request my executors to retain in their possession the title deeds for the same, as the said legacy is contingent, and it may be advisable for the executors to give the treasurers of those two institutions an order to receive the rent annually as the same becomes due.

Item.  I give and bequeath all the rest and residue of the estate I may die possessed of, both real and personal, to my sons Thomas Parke and James Pemberton Parke, their heirs and assigns for ever, to be equally divided between them as tenants in common.   And I affectionately enjoin them to settle their proportions amicably, either by dividing the property in its present form or by disposing of my unimproved lands, as may be thought most advantageous and advisable, in which I trust and hope my friends Benjamin R. Morgan and Joseph P. Norris will aid and assist them with their advice.   If either of my sons Thomas or James should depart this life before my decease, I desire and direct that the property herein bequeathed to such deceased son shall be appropriated and belong to the surviving brother; and if both should depart this life before my decease, I desire the property herein bequeathed to them shall descend, after my decease, to my dear daughter, Hannah Parke, her heirs and assigns.   And, it being my desire to secure to my sons the full and entire benefit of the bequests herein made, I hereby make the following provisions for that purpose:

As for and concerning all the estate and property, real and personal, by this my last Will and Testament devised and bequeathed to my son Thomas Parke, I do hereby give, devise and bequeath the same to my friends Benjamin R. Morgan and Joseph Parker Norris, and the survivor of them, and the heirs, executors, administrators and assigns of such survivor, in trust, during the natural life of the said Thomas Parke, my son, to pay the rents, issues, profits, interest and income arising therefrom, into the proper hands of my said son Thomas, or to such person or persons as he, by any order in writing, may for that purpose appoint; and after the death of my said son Thomas, to assign, transfer and convey all the said estate, real and personal, to such person or persons for such estates and uses, and in such manner as my said son Thomas shall by his last Will and Testament appoint, and in default of such appointment, then to such persons, for such estates, and in such portions as would, by the laws of this Commonwealth, be entitled to the said real and personal estate, were my said son Thomas to die intestate, seised and possessed thereof, with full power to the said trustees, from time to time as to them and to my said son Thomas may seem expedient, to sell and dispose of any and every part of the said real and personal estate in

[Vaux v. Parke.]

this clause mentioned, and the proceeds thereof to re-invest in such real or personal estate or securities, as to them may seem expedient, subject to the same trusts, limitations and provisos as are in this clause expressed concerning the real and personal estate hereby devised and bequeathed to the said trustees; and, Provided, that if my said son Thomas shall be so relieved from embarrassment, as in the opinion of the said trustees shall render it expedient, then that they, the said trustees and the survivors of them, and the heirs, executors, administrators and assigns of such survivor, do and shall assign, transfer and convey, the said real and personal estate in this clause mentioned, to my said son Thomas, his heirs and assigns, absolutely and in fee simple.

As for and concerning all the estate and property, real and personal, by this my last Will and Testament devised and bequeathed to my son James Pemberton Parke, I do hereby give, devise and bequeath the same to my friends Benjamin R. Morgan and Joseph Parker Norris, and the survivor of them, and the heirs, executors, administrators and assigns of such survivor, in trust, during the natural life of the said James Pemberton Parke, my son, to pay the rents, issue, profits, interest and income arising therefrom into the proper hands of my said son James, or to such person or persons as he, by any order in writing, may for that purpose appoint; and after the death of my son James, to assign, transfer and convey all the said estate, real and personal, to such person or persons, for such estates and uses, and in such manner as my said son James shall by his last Will and Testament appoint; and in default of such appointment, then to such persons, for such estates and in such portions as would, by the laws of this Commonwealth, be entitled to the said real and personal estate, were my said son James to die intestate, seised and possessed thereof, with full power to the said trustees, from time to time, as to them and my said son James may seem expedient, to sell and dispose of any and every part of the said real and personal estate in this clause mentioned, and the proceeds thereof to re-invest in such real or personal estate or securities as to them may seem expedient, subject to the same trusts, limitations and provisos as are in this clause expressed concerning the real and personal estate hereby devised and bequeathed to the said trustees; and, Provided, that if my said son James shall be so relieved from embarrassment, as in the opinion of the said trustees shall render it expedient, then that the said trustees and the survivor of them, and the heirs, executors, administrators and assigns of such survivor, do and shall assign, transfer and convey all the said real and personal estate in this clause mentioned, to my son James, his heirs and assigns, absolutely and in fee simple.

Error assigned:

The Judge erred in ordering a nonsuit to be entered and in refusing to take off the same.

[Vaux v. Parke.]

*Meredith,* for the plaintiff, contended that James P. Parke took an estate in the premises; whether legal or equitable was not important, nor whether in fee or for life, there being no devise over, or any contingency, and therefore it was not in the power of the testator to screen it from liability to his creditors, that being a restriction repugnant to the estate granted, which passed subject to all the incidents annexed to it in law and equity. This principle was settled by this court in *Hamersley* v. *Smith,* (4 *Whart.* 126); and *Hemphill* v. *Hurford* (3 *Watts & Serg.* 216); which in effect decide the present case. They are supported by *Snowdon* v. *Dales,* (6 *Sim.* 524); *Graves* v. *Dolphin,* (1 *Sim.* 66); *Brandon* v. *Robinson,* (18 *Vez.* 429); and by 1 *Rus. & Myl.* 395; 1 *Myl. & K.* 4; 4 *Mad. R.* 504. It might be well contended, indeed, that the estate in J. P. Parke was a use executed. 1 *Bro. Ch.* 274; 18 *Vez.* 429; 1 *Pow. Dev.* 129; *Shep. Touch.* 304, 506; 1 *Vez.* 142; 1 *P. Wms.* 142; 2 *Vez.* 645; but at any rate there was an equitable freehold, which was bound by the judgment and subject to execution and sale. 2 *Atk.* 294; 2 *Vern.* 248; 1 *Vez. Jun.* 435; 3 *Ch. R.* 37. Here there is in the first instance an express devise in fee simple, and the intention of a trust is inconsistent with it and must give way. 2 *Vern.* 526; *Amb.* 377; *Cas. Temp. Talb.* 19; 8 *Vez.* 42; 1 *Sim. & Stu.* 10; 2 *Ib.* 217. *Fisher* v. *Taylor* is relied on by the defendant; but there was an express provision in that case that the land should not be liable to the son's debts, which is not the case here. But that case certainly conflicts with the English chancery cases and with *Hamersley* v. *Smith,* and *Hemphill* v. *Hurford,* and cannot now be sustained. *Morrow* v. *Brenizer* (2 *Rawle* 185) was a case of money directed to be turned into land, and in *Ashhurst* v. *Given,* (5 *Watts & Serg.* 323) the son was made a trustee and had no equitable estate.

*Barclay* and *J. Sergeant* for the defendant.

There is no policy or equity in prohibiting a parent from providing for the maintenance of his child and preventing creditors from taking the parent's property. He is bound to support his child, and ought not to be compelled, instead of doing so, to leave him to starve or live on alms. The principle is well established that one may give by will what he pleases, unless he interferes with some provision of the law, and his intention governs. *Ruston* v. *Ruston,* (2 *Dall.* 344); *Holdship* v. *Patterson,* (7 *Watts* 551), and *Ashhurst* v. *Given* (5 *Watts & Serg.* 330), are strong cases to show that even against creditors such an intent is sustained. The intention to protect the property of his son from his creditors is clear from the last clause of the will, and that controls the whole. The right to enjoy the profits, the right to live in the house, were personal and could not be disposed of or sold to a stranger. *Fisher* v. *Taylor* (2 *Rawle* 33) is in point, and that was a solemn decision of this court many years since, under which titles have

[Vaux v. Parke.]

been created and held. In *Hamersley* v. *Smith* and *Hemphill* v. *Hurford*, the questions were altogether different. This point was not mooted in either of them, nor was *Fisher* v. *Taylor* even cited. This debt existed before Dr. Parke's death, which appears by the docket entry, and is not denied. The object of the three living together would be destroyed by a sale, and Miss Parke turned out. J. P. Parke had no estate in the land that he could alienate, nor could he recover any in ejectment against the trustees, nor could he break the trust by confessing a judgment or otherwise. No case says the land can be taken from the trustees by a creditor. It is another question, not raised here, whether an assignee of the *cestui que* trust could take the income, but he certainly could not take the land.

The opinion of the Court was delivered by

SERGEANT, J.—This case seems to present the same question which was decided by this court in *Fisher* v. *Taylor*, (2 *Rawle* 33). There the testator directed his executors to purchase a tract of land to be conveyed to them in trust for his son, who was to have the rents, issues and profits, but the same was not to be liable to any debts contracted or which might be contracted by him; at his death the land was to vest in the right heirs of the testator; and it was held that the son had not such an interest in the land as could be taken in execution and sold for his debts. The court say the intention of the testator was manifestly to secure to his son the enjoyment of the rents, issues and profits during his life, in such a manner as to be secured from the payment of his debts, and the executors were constituted special trustees for that purpose. It was necessary the trustees should take the legal estate to carry that intention into effect. A different construction would defeat the intention. There was nothing in this illegal or contrary to public policy. The benefit the son derived was merely a right to receive the rents and profits of the premises. In the case now before us, the same intention is manifest from comparing the different clauses of the will, and the devise to trustees, and the directions as to the son are quite as strong as in that case. It cannot therefore be determined that the son has an estate in the land bound by the judgment, (which it is essential he should have in order that it may be taken in execution, *Morrow* v. *Brenizer*, 2 *Rawle* 188), without considering the creation of the trust as a mere nullity, or else confounding together a *simple* trust, which gives the *cestui que* trust a right to the possession, control and disposal of the land, and a *special* trust which gives him no more than the right to enforce in equity the intention of the testator to the extent of his interest. The distinction between these two classes of trusts pervades the whole doctrine of trusts, and without a due regard to it their existence cannot be preserved. Settlements of this kind by parents on their children have been

VII. — 4     c

[Vaux v. Parke.]

of constant occurrence, and much property has been thus adjusted by will or deed. No case has ever decided that a trust of this description can be annihilated by an execution against the *cestui que trust.* No such point is to be found in *Hamersley* v. *Smith*, (4 *Whart.* 126), or in *Hemphill* v. *Hurford*, (3 *Watts & Serg.* 216), nor was *Fisher* v. *Taylor* referred to in either of them. *Hamersley* v. *Smith* was a bequest of money, to be invested by the executors in trust for the sole use and benefit of testator's granddaughter, but if she should die before the testator, then to her daughter. The granddaughter survived the testator and her husband and married a second time, and it was held that the trust for her separate use ceased on her discoverture and was not revived by her second marriage. The only point decided was, that a right to the separate use of an unmarried woman imposed no restriction on her when she married. In *Hemphill* v. *Hurford* there was a bequest of money to executors in trust for R. C. H., to be by them invested for his use and that of his legal representatives, either in real or personal estate, according to their best discretion—the legacy to be paid at the end of three years after the testator's decease, or sooner if the executors judged fit; and it was decided that the legatee might sue for it after the three years, the court saying it did not appear from anything contained in the will that it was the intention of the testator to restrain the legatee from disposing of the legacy as he pleased.

We are, therefore, of opinion that the defendant in the judgment, James P. Parke, had no estate or interest in the land which could be sold or conveyed by the sheriff on the execution against him. We give no opinion how far such a right as he had could be reached by his assignees or by other proceedings on behalf of creditors.

Judgment affirmed.