## SARAH ROBERTS, ET AL. *v.* EXECUTORS OF JOHN ROBERTS, DEC'D.

1. What words in a will, devising real estate, will operate to vest the right of possession in the executors, and authorize them to recover it by action.
2. Held, that the words, "I give to my wife, Sarah Roberts, for, and during her natural life, the house and lot where I now live, but the same is to be managed and controlled by my executors for her use and benefit,"

coupled with the language of other portions of the will, and the wife electing to recover her dower, vest the legal right of possession in the executors, who may recover the same by action.

GENERAL TERM.—On error to reverse a judgment rendered, at the special term of November, A. D. 1854, in favor of the executors of the last will and testament of John Roberts, deceased, and against the plaintiff in error, widow of said Roberts, deceased.

John Roberts, the defendant's testator, died, leaving a will, which, after his death, was properly probated, and is now in full force. By the first clause, he devises to his grandchildren, certain lots of land in Cincinnati, with the reservation, "that the same are to be managed and controlled by my executors hereinafter named *during the lifetime of my wife, Sarah Roberts,* and the net rents shall be, by them, paid over to my said grandchildren; but after the decease of my said wife, the devisees are to have the property in full and absolute estate to them, and their heirs forever."

By the second clause, the executors are authorized to sell certain Indiana lands, with or without partition, at public or private sale, in such portions and upon such terms as they shall deem advisable, and the proceeds, after paying charges, to be invested, the interest, or income, to be divided, yearly, between the wife and the grandchildren, one-third part to her, the remainder to them. At her death, the grandchildren were to become the owners of the principal sum invested.

By the third clause, the testator gives "the house and lot where I now live *to my wife, Sarah Roberts, for, and during her natural life, but the same is to be managed and controlled by my executors, for her use and benefit;*" and, at her decease, "*the real estate mentioned in* this clause is to be sold by my executors," and the proceeds divided between his children and grandchildren.

By the fourth clause, the testator directed, that after the payment of his debts, and all charges for the settlement of his estate, his personal estate shall be invested as the executors shall judge most safe, the interest and income of which,

after deducting all expenses and charges, to be paid to the testator's wife during her lifetime; at her decease, the same was to be distributed among those entitled to the realty.

This will was admitted to record in the probate court, March 16, 1852. On the 10th September, 1852, Sarah Roberts, the widow of the testator, elected to take her estate at law, and not as devisee under her husband's will: this election was made in writing, as required by the statute, approved by the court, and was regularly recorded. Subsequently Mrs. Roberts applied for her dower in her husband's estate, which was set off to her, except in the lot specially devised to her by her husband.

The executors bring their action, against the widow, to recover the possession of the homestead, as she refuses to surrender it, alleging that the will confers no right upon them to claim it.

*Tilden, Rairden & Curwen,* for plaintiff in error.

*Bates & Scarborough,* and *A. T. Butler,* for defendants in error.

STORER, J., delivered the opinion of the court.

The only real question made by the plaintiff in error, at special term, was this, that the executors of John Roberts had no such an estate vested in them, by his will, as would authorize an action in their names to recover the possession of the land in controversy.

By the third clause of his will, the testator devises "the house and lot where I now live, to my wife, Sarah Roberts, for and during her natural life, but the same is to be managed and controlled by my executors for her use and benefit." The effect of this devise is, we suppose, to give to the executors the right to the possession of the premises, collect the rents, and appropriate them to the wife's use. On no other construction can we perceive how the duties required of the trustees could be performed, nor the object of the testator accomplished. That object unquestionably was the maintenance of his widow, as well as the whole care and responsibility of pro-

tecting the property from waste, paying the taxes, selecting proper tenants, and ousting those who should prove delinquent. If it was necessary, we think the devises in the first and second clauses of the will might well be relied on to sustain the view we have taken, as they very clearly indicate the testator's intention to invest his executors with the absolute control over his estate.

The law was settled at an early day, that the legal estate will be held to vest in the donee to uses to enable him to perform the duties with which he is intrusted, though it will not be held to vest, unless it is clearly necessary to the execution of the trust.

Hill on Trustees, 327; 1 Cruise Dig. T. 4. 12. ch. 1, §§14, 25; 2 Jarman on Wills, 200.

And in every such case, where the object of the will can not otherwise be accomplished, the trust will not be executed in the *cestui que trust.* 5 Watts & Serg. 323, *Ashhurst* v. *Given;* 7 Watts & Serg., 19–29, *Vaux* v. *Parke;* 1 N. H., 232–236, *New Parish, etc.* v. *Odiorne.*

In applying these principles, the courts have very liberally construed the powers given to executors. Thus, in 1 Bro. C. C. 74, *Shapland* v. *Smith;* Lord Thurlow held: " if the trustees were to pay taxes and repairs, the legal estate during the life of the devisee was in them. And in 2 D. & E. 444, *Sylvester* v. *Wilson,* it was determined, that when the trustees were authorized to receive rents and apply them for the maintenance of the testator's son, that the testator intended they should have discretion in the application of the money, and therefore they took the legal estate.

It is immaterial whether there is a direct devise to the executors or not, if the intention to give them the estate can be collected from the will. 6 Ad. & El. 206, *Doe* v. *Homfray.*

And there is no distinction between a direction to pay the rents to another or to permit him to receive them, as it was well remarked by Sir James Mansfield, in 2 Taunt. 109, *Leicester* v. *Biggs,* "that good sense required, in such case, there should be a trust, and the estate be executed in a

Sarah Roberts, et al. v. Executors of John Roberts, deceased.

trustee, for how can one be said to permit and suffer who has no estate, and no power to hinder the *cestui que trust* from receiving ?"

So a trust "to permit and suffer the testator's wife to receive the rents during her widowhood, followed by a direction that her receipt to any one of the trustees should be valid, vested the legal estate in the trustees, it being clearly intended they should exercise a control." 4 Taunt. 772, *Gregory* v. *Henderson.*

The same ruling is found in 1 Bing. N. C. 573, *White* v. *Parker;* 4 Mees. & Wels. 429, *Barker* v. *Greenwood;* 3 Barb. Ch. 95, *Craig* v. *Craig.*

The principle thus indicated, when applied to the power of the executors of Roberts, very clearly, we think, settles the question that if the estate of Mrs. Roberts was in existence at the time they commenced that action, they held the legal estate in the property named in the third clause, and were entitled to recover the possession.

But it is contended, that as the widow did not elect to take the devise, but declined it, and as she is no longer entitled to the rents, there is no necessity the legal estate should exist in the trustees.

It is further claimed that the life-estate given to the wife, after her refusal to take it, became lapsed, and descended to the heirs general of the testator, who took the same estate to which the first donee would have been entitled.

The third clause of the testator's will, to which we have already referred, in addition to the devise to the wife for life, directs, "that at her death, the real estate mentioned in this clause is to be sold, and the proceeds divided by my executors as follows: One-third to my daughter, Winifred; one-third to the children of my late daughter, Mary, wife of Wm. Walker; one-sixth to my daughter, Harriet, and one-sixth to her children."

By this devise, the persons named took a vested remainder in fee, and were therefore entitled to the property when the intermediate estate was determined. It is proper, then, to ascer-

tain the object and extent of the devise to the wife—whether it was intended merely to create a term for her benefit, or to indicate at all events a period of time which must .occur before those in remainder can take the estate.

It is evident from the whole will, more especially from the clause we are now considering, that the testator supposed his widow would accept the devises he had made. They were very carefully defined, and guarded strictly, by interposing the advice, control, and management of the executors, for the faithful execution of the trust. We can not think it could have been contemplated that any such contingency would have happened, as occurred when the wife declined the estate ; for no provision is made for such an event, and the objects of the testator's bounty, who were to enjoy his estate when the devise to the wife should be determined, were all specially named, and their precise portions in the various lots and lands clearly defined. We can not, then, suppose it was intended to permit the general heirs to take the life-estate thus granted to the wife, should she determine not to accept, and thereby postpone those in remainder until the time expired by her death, whereby the principal benefit they could have derived from its enjoyment would be defeated. Such a construction would practically introduce a new class of devises into the will, and change the entire character and purpose of the will itself, thereby defeating the testator's intention by a technical rule that can have no foundation in the language of the will, the object the testator had in view, or in any legal principle, properly applicable to this case.

When the wife refuses to take, under the will, her estate determined, it was as if it had never existed—not merely the estate itself, but the term also, by which it was limited. It was as if the devise had been made directly to the remainderman in fee, with the condition, that if the wife should consent to take the estate for life, in lieu of dower, she should be at liberty to do so. The refusal of the wife in such a case would not leave a term for her life still undisposed of, or create a lapse.

An examination of the law, as it has been held for several centuries, will, we are satisfied, justify the construction we have announced.

Mr. Jarman, in his work on "Wills," vol. 1, 513, says: "Another question which has been agitated between the heir and devisee is, whether in a series of consecutive limitations, a particular estate be void in its creation from being limited to a person incapable by law, or *refusing to take*, the remainders immediately expectant on such estate are accelerated, or the interest in question descends to the testator's heir-at-law, as real estate undisposed of. The early authorities are clearly in favor of this acceleration." He quotes Perkins, 567, where the devise was of a life-estate to a monk, and the remainder to a stranger, in fee, and at the devisor's death, the monk being alive, he in remainder shall take. And this was the ruling in Cro. Eliz. 425, *Fuller* v. *Fuller*, where it was held the same result would happen if the devisee for life refused the estate. It is said the case just referred to did not raise the points decided, but the principle had nevertheless been previously adjudicated, and has ever since been recognized as sound law.

We find it affirmed in 1 Co. 101, *Shelley's case;* in Plowd. 414, *Newis, et ux,* v. *Lark, et al.,* where it is said: "If there be a devise in tail, the remainder in tail, and the first devisee disagrees, he in remainder shall have it." The same rule is quoted in 1 Eq. Cases Abr. 216, pl. 4; 19 Viner's Abr. Rem. C.; 3 Com. Dig. Tit. Dev. N. 18, 426, and in Bac. Abr.: "The doctrine evidently proceeds upon the supposition that, though the ulterior devise is in terms not to take effect in possession until the decease of the prior devisee, if tenant for life, or his decease without issue, if tenant in tail, yet that, in point of fact, it is to be read as a limitation of a remainder, to take effect in every event which removes the prior estate out of the way;" 1 Jarman, 514. And thus Lord Hardwicke said, 1 Ves. Sen. 422, *Avelyn* v. *Ward:* "If the precedent limitation, by what means soever, is out of the case, the subsequent limitation takes place." So

Lord Mansfield, in 1 Douglass, 340, *Hodgson* v. *Ambrose:* "This is the common case of a remainder after an estate tail, where, if the first estate never takes place, the remainder vests in possession immediately." See also 2 Vern. 722, *Hutton* v. *Simpson, et ux.*

If we regard, then, the estate intended by the testator for his widow, as no longer existing, and in the language of the books "out of the way," it would seem the devisees in remainder must take, and be entitled to, the immediate use of the property devised.

The question then arises, is the legal estate transferred to the devisees, or does it still remain in the executors. To give full effect to the testator's intention, we must look at the whole will. By the first clause there is a devise to his grandchildren, by name, to be managed and controlled by the executors, during the lifetime of his wife, who are required to pay over to the devisees the net rents: at the wife's death, the devisees are to have the absolute estate.

This devise is free from all doubt; it explains, very clearly, the testator's object; is dependent upon no subsequent act of the wife, and is determined only by her death. The second clause authorizes the executors to sell the testator's Indiana lands, in such portions and on such terms, as they shall deem advisable, the proceeds to be invested, and one-third of the income to be paid to the widow, the other two-thirds to the children of the testator's son, John, in equal portions; on the death of the wife, the children of John Roberts to have the whole estate thus invested. From these clauses, as well as the third, we may well infer the testator intended to prevent the partition of his estate until the death of his wife. He was desirous that the executors should, in the meanwhile, have the exclusive control over it, and preserve it, unimpaired, for those to whom it would eventually pass. Their youth, and inability in other respects, might well have induced him to postpone the period for the absolute enjoyment of the estate by his children and grandchildren; the rents in the mean while being regarded

as a sufficient provision for the devisees in remainder. We may, then, without doing violence to the will itself, or disregarding any legal principles, hold, that the executors still retained the right to the possession of the estate refused by the widow, for the same purpose for which they would have held it if she had accepted the life-estate. The rents, however, instead of being paid to her, to be appropriated to the devisees in remainder, until her death.

But if there is any technical rule to forbid such a construction, and that there is, we are not aware, the estate in remainder has vested in possession, by the removal of the intermediate term, and those entitled to enjoy it, can hold it only, as provided by the will itself.

At the death of the wife, the lot was to be sold by the executors, and the proceeds divided among the devisees.

The discretion then was vested in the executors to dispose of the property, and if the time has arrived for the execution of the power, its existence presupposes the right to the possession by the trustees. This point was held by the Supreme Court in 3 Ohio, 324, *Dabney* v. *Manning, et al.*, and we see no reason to doubt its application to the present case.

Whether, then, we hold the executors are entitled to the possession to preserve the estate, and receive the rents, until the death of the widow, or to sell the property in virtue of the discretion vested by the will, we hold they might well have sustained the present action.

It has been objected that if the devisees in remainder take an immediate estate, under the third clause, the devisees, under the first and second clauses, will be compelled to bear the whole burden of the widow's dower, it being understood when she received her life-estate, she was endowed of a portion of the testator's property, included in these clauses. We can not, in deciding principles, if we are satisfied they are rightly applied, be controlled by the inconvenience they may produce. It is impossible to adjudicate upon any case, unless such a result is more or less

produced; and if we were asked to withhold our decision until we were satisfied that there would be no cause for complaint, we might well decline to render judgment in any case, however clear should be our convictions of the law.

We suppose, however, all anticipated difficulties could be obviated and equitably arranged, if the interference of the proper tribunal should be invoked.

Judgment affirmed.